## In re Anonymous No. 28 D.B. 73

Disciplinary Board Docket no. 28 D.B. 73.

JOHNSON, *Board Member*, May 20, 1980—Pursuant to Pa.R.D.E. 218(c)(5), the Disciplinary Board of the Supreme Court of Pennsylvania submits its findings and recommendations to your honorable court with respect to the above petition for reinstatement.

## I. HISTORY OF PROCEEDINGS

This matter comes before your honorable court on petitioner's second petition for reinstatement. By order of the Supreme Court of Pennsylvania dated November 24, 1975, petitioner was suspended from the practice of law for a period of three months, effective December 24, 1975. This suspension resulted from proceedings on a petition for discipline docketed at No. 28 D.B. 73, No. 110 Disciplinary Docket No. 1. The order of suspension gave petitioner "the right to file application for re-admission at any time following thirty (30) days from the date of suspension."

Petitioner filed his first petition for reinstatement to No. 28 D.B. 73. Additional charges were pending

718

against petitioner and consequently his petition for reinstatement filed at No. 28 D.B. 73 was consolidated with a petition for discipline filed at No. 14 D.B. 76. Approving the recommendations of the Disciplinary Board of the Supreme Court of Pennsylvania, your honorable court on May 8, 1978, by order denied the petition for reinstatement at board file No. 28 D.B. 73 and at board file No. 14 D.B. 76 imposed a further suspension to extend to March 1, 1979, granting petitioner the right to apply for reinstatement on or after March 1, 1979.

On February 26, 1979 petitioner filed with the board a copy of a petition for reinstatement which he had filed with the Supreme Court of Pennsylvania together with a "Petition for leave to file application for readmission with Disciplinary Board of the Supreme Court in Forma Pauperis." Petitioner by cover letter requested the Secretary of the Board to "tenatively [sic] assign the Petition to a Hearing Committee upon the assumption that the Court will act favorably." The thrust of the latter petition was to be excused from the payment of the necessary expenses of his previous petition for reinstatement as contained in your order of May 8, 1978. The Office of Disciplinary Counsel opposed the petition to proceed in forma pauperis. Petitioner withdrew that petition and paid the expenses.

The instant petition for reinstatement was referred to hearing committee [ ]. The hearings consumed three full days and part of a fourth day. During the course of the hearings, hearing committee member [ ], Esq., by reason of testimony offered, became aware of a possible conflict and disqualified himself from further consideration of the matter. It was agreed by all parties that the hearing proceed before the remaining two hearing committee members.

Petitioner was represented by [A], Esq. and the Office of Disciplinary Counsel by [ ], Esq. and [ ], Esq. By telephone call to the hearing committee chairman on May 18, 1979 and again at the hearing on May 21, 1979 [A], Esq. moved to withdraw from the case with the permission of his client because of the difference of opinion with his client over a continuance deemed necessary by Mr. [A] to enable him to adequately prepare, in view of the nature of the evidence which had been presented to the committee on May 15. After careful consideration, it was the judgment of the committee (and of the Chairman of the Disciplinary Board, who was consulted by telephone) that the withdrawal of Mr. [A] at that stage of the proceedings would be inevitably prejudicial to his client and the motion for withdrawal was refused and the request for continuance granted, over the strenuous protest of petitioner. The hearing resumed on June 11, 1979 without further protest.

On November 16, 1979, hearing committee [ ] filed its report recommending that the petition for reinstatement be denied. No exceptions to the hearing committee report have been filed by either petitioner or disciplinary counsel.

## II. DISCUSSION

The consideration of a petition for reinstatement is governed by the dictates of Pa.R.D.E. 218(3)(i) which provides as follows:

"A disbarred or suspended attorney shall have the burden of demonstrating by clear and convincing evidence that such person has the moral qualifications, competency and learning in law required for admission to practice law in this Commonwealth and that the resumption of the practice

of law within the Commonwealth by such person will be neither detrimental to the integrity and standing of the bar or the administration of justice nor subversive of the public interest."

Consequently, the petitioner has the burden of demonstrating by clear and convincing evidence not only that he has the moral qualifications, competency and learning in law required for admission to practice in this Commonwealth, but also that the resumption of practice by him will be neither detrimental to the integrity and standing of the bar or the administration of justice, nor subversive of the public interest.

Disciplinary Counsel has not challenged petitioner's technical competency and learning in the law. Petitioner testified to his continued interest in and study of the law during his suspension. What is at issue in this matter is whether petitioner has the moral qualifications required to practice law in Pennsylvania and whether or not his resumption of practice would be detrimental to the integrity and standing of the bar, the administration of justice or subversive to the public interest.

As pointed out by the hearing committee in its report, the general requirements for admission to the bar of this Commonwealth are set out in Pa.B.A.R. 203. The term "moral qualifications" is not specifically defined therein but evidently refers to subsection 3 which provides "[a]bsence of prior conduct by the applicant which in the opinion of the board indicates character and general qualifications (other than scholastic) incompatible with the standard expected to be observed by members of the bar of this Commonwealth."

It would be impossible for any attorney who has been suspended from the practice of law to show an

absence of prior conduct incompatible with the standard expected to be observed by members of the bar of this Commonwealth. Therefore, the test for the "moral qualifications" mentioned in Rule 218 must be a test of rehabilitation.

A denial of reinstatement should never be used as additional punishment for a suspended attorney's prior misconduct for which discipline has been imposed. However, in considering a petition for reinstatement it is proper to consider the prior infractions of the suspended attorney to determine whether or not there has been rehabilitation, or whether it is predictable that if reinstated, the same type of conduct will continue and be "detrimental to the integrity and standing of the bar or the administration of justice" and "subversive of public interest."

The petitioner, 37 years of age, was admitted to practice in 1972 and first suspended in December, 1975. In a short career he was found by the Disciplinary Board on two different occasions to be guilty of serious infractions of the disciplinary rules including such incidents as pulling a loaded revolver from his pocket during a scuffle in a police station, making a "sham" withdrawal as counsel to obtain a continuance, falsifying an application for a license to carry firearms, continuing to maintain signs identifying himself as a lawyer after suspension, using vile and obscene language to a policeman in connection with the arrest of a client, neglect of legal matters, conduct involving dishonesty, fraud and deceit and representing parties in a conflict of interest. The issue then is whether petitioner has demonstrated by clear and convincing evidence that he has changed sufficiently so that he may be reinstated without risk to the integrity and standing

of the bar, the administration of justice or the public interest.

It is the conclusion of this board that not only has petitioner failed to meet the burden of proof required of him but on the contrary, evidence produced both by petitioner himself and by disciplinary counsel, clearly demonstrates that petitioner should not be reinstated.

With regard to petitioner's own testimony, he feels that he still doubts that he has committed wrongs deserving punishment and holds a strong resentment of the treatment which he has received from the disciplinary system. He seems to view his prior problems with the disciplinary system as merely a "style of practice," admitting bad manners and poor judgment in that style. While he claims he is making progress toward the ability to change his style, it is evident from his testimony that he regards any change of style with regret, and fears that he will not represent his clients adequately by an acceptable style of practice. His testimony can be viewed as a condescending effort to meet the ethics expected of him as an attorney. He seems to doubt a client can be adequately represented by any attorney functioning within the purview of the disciplinary rules. This is exemplified by his statement, "I think the Canons of Professional Responsibility are outdated." Petitioner sees himself struggling to function with the Code of Professional Responsibility required of the legal profession. If reinstated, how will he meet his responsibility? According to his own statement, "I am going to do a lot more of covering my own tail, if you will, rather than my clients."

Disciplinary counsel by cross-examination established that petitioner's answers to his reinstate-

ment questionnaire omitted important and relevant information, which in and of itself is grounds for refusal of reinstatement: No. 50 D.B. 73. Even more important however, with regard to the fitness of petitioner to practice law, was direct testimony presented by disciplinary counsel.

The initial functioning of the hearing committee was a pre-hearing conference scheduled for April 27, 1979. A bizarre series of incidents began at approximately 1:00 a.m. on April 6, 1979, when a rock on which was written "Death to [B]— slowly" was thrown through a window of the home of [B], Esq., the Assistant Disciplinary Counsel-in-Charge of the District [   ] Office of the Disciplinary Board. Approximately 30 minutes after the rock was thrown through [B]'s window, a telephone call to his home was answered by [B]'s son and a male voice said to him, "You will die slowly" repeating this three times. Shortly thereafter another telephone call was made to [B]'s residence at which time [B], answering the phone, heard a man he identified as petitioner say, "You will die. You will die." On the afternoon of April 6, 1979, a telephone call traced to a pay telephone at [E] Library was made to [B]'s home and answered by his son. The voice on the telephone stated, "Family will suffer after your father dies. The next time gasoline will come through the window. The next time the family will suffer after your father dies." It was established that petitioner was at the [E] Library at the time of this call. On April 8, 1979, at approximately 2:30 a.m., a telephone call to [B]'s home wherein the caller did not speak, was traced by the telephone company to petitioner's home. This course of conduct is consistent with the type of impulsive behavior petitioner had exhibited on prior occa-

724

sions leading to his problems with the disciplinary system. The hearing committee considering all of the evidence, including prior confrontations, concluded that petitioner was responsible for the rock throwing and telephone calls. The board after a careful and thorough review of the evidence agrees that no other conclusion could be reached.

The hearing committee properly addressed the question as to the burden and standard of proof concerning the evidence offered by disciplinary counsel involving the rock throwing and death threats. It appears this case is a matter of first impression in the Disciplinary System of Pennsylvania wherein evidence has been presented as to affirmative conduct on the part of petitioner to demonstrate his lack of fitness and moral qualifications to be reinstated. There have been previous cases in which a pending petition for discipline has been consolidated with a petition for reinstatement and the two issues tried together. In fact, that was the situation when petitioner filed his first petition for reinstatement. In those cases of consolidation it is recognized that under Pa.R.D.E. 218, petitioner has the burden of proof on the general issue of his qualifications for reinstatement and fitness to practice, while on the other hand, disciplinary counsel has the burden of proving petitioner-respondent is guilty of the charges raised in the petition for discipline by clear and convincing evidence. By analogy, the hearing committee held that disciplinary counsel had the burden of proof as to the allegations of petitioner's threats. Berlant Appeal, 458 Pa. 439, 328 A. 2d 471 (1974), held that proof beyond a reasonable doubt is not required in disciplinary proceedings and that all that is required is the preponderance of evidence, the proof of which must be

clear and satisfactory, but that a charge of professional misconduct may rest exclusively on circumstantial evidence. This was the standard adopted by the hearing committee with respect to the issue of affirmative conduct raised by disciplinary counsel in this case. The board affirms the ruling of the hearing committee.

Petitioner offered as a witness his psychiatrist who testified he diagnosed petitioner as having poor impulse control, adding that the treatment process was barely started and that petitioner is not yet cured in any sense of the word. This diagnosis is supported by petitioner's past disciplinary history as well as the shocking conduct directed toward [B]. As stated in the hearing committee report, the way in which petitioner's emotional impulses could interfere with his legal judgment was graphically illustrated at one point in the hearing when petitioner demanded the right to have his counsel released and to carry on alone on grounds that he had a right to "mess up my own case." When his counsel's motion for withdrawal was denied and the continuance, to which petitioner objected, was granted to enable his counsel to prepare adequately, petitioner had a tantrum, wept and went to the extreme of threatening to withdraw his petition and never to return to the hearing room again, a threat which he subsequently did not carry out.

The hearing committee in a very well organized and reasoned report arrived at definitive findings of fact. Based upon a complete review of the evidence, the board adopts those findings of fact which, for the convenience of your honorable court are as follows:

1. By order of the Supreme Court of Pennsylvania dated November 24, 1975, petitioner was sus-

pended from the practice of law for a period of three months.

2. At the conclusion of petitioner's original suspension he filed a petition for reinstatement which was ultimately considered simultaneously with a new petition for discipline filed against petitioner which resulted in an order of the Supreme Court dated May 8, 1978, denying the petition for reinstatement and continuing petitioner's suspension until March 1, 1979.

3. At a date prior to March 1, 1979, petitioner filed with the Supreme Court of Pennsylvania and served on the Disciplinary Board a petition for reinstatement addressed to "The Several Justices and The Chief Justice of The Supreme Court of Pennsylvania," which petition was received and filed with the Disciplinary Board on February 26, 1979.

4. In connection with and subsequent to the filing of his petition for reinstatement hereinabove referred to, petitioner submitted to the Disciplinary Board his answers to the reinstatement questionnaire required by the Rules on Form D.B.-36.

5. Petitioner's answers to the reinstatement questionnaire did not disclose, inter alia, the following matters which are nevertheless found to be facts:

(a) Petitioner's educational history included attendance at four different colleges, suspension from [　] University for having alcoholic beverages in his room and expulsion from [　] School of Law in 1969 for cheating on a law school examination.

(b) Petitioner was arrested on October 22, 1973, in [　] County, Pennsylvania, for tampering with and threatening a witness and on March 11, 1968,

in Pennsylvania for aggravated assault and battery and obstructing an officer in the execution of legal process.

(c) In addition to the petitions for discipline filed against petitioner which led to his suspensions, petitioner has been the subject of other letters of complaint and was on one occasion informally admonished, which admonition was subsequently vacated when petitioner made demand for the institution of a formal proceeding under the rules. The proceeding was thereafter withdrawn.

(d) Petitioner received income, including investment income, and interest income, which was unreported in the reinstatement questionnaire.

6. When engaged in the practice of law, petitioner was justly regarded by his peers as a zealous and skilled practitioner in the fields of the law in which he practiced, and petitioner has continued his interest in and study of the law during his periods of suspension.

7. As has been found by previous hearing committees and by the Disciplinary Board, however, and has been remarked on by petitioner's witnesses and by petitioner himself, his practice of the law has been marred by intemperate conduct, sometimes of a very bizarre nature.

8. At the time of the hearing and prior thereto, petitioner was undergoing therapy for the purpose of correcting his undesirable personality traits, which have been diagnosed by his current physician as unsocialized conduct disorder, which basically has to do with things such as difficulties with impulse control.

9. At the time of the hearing, petitioner was making some progress, but the problems he presented to

his physician required a careful working through and it was difficult for the physician to predict an exact endpoint of therapy at that time, for petitioner had been under the physician's care for only three or four months.

10. Despite the fact that petitioner was found by a previous hearing committee to have retained a $200 fee which he had accepted in a conflict of interest case in violation of the Code of Professional Responsibility and therefore had a duty to return to his client, even to the date of the present hearing,. petitioner had failed to return the $200 fee, claiming that he had received no clear directive to do so.

11. Petitioner's own testimony at the hearing concerning his present attitude toward the practice of law disclosed that while he would attempt to get along better with other people, he feared that he might represent clients to their detriment and that he was uncertain if he would be able to practice with the zealousness and dedication that he once did, and that he would "do a lot more of covering my own tail, if you will, rather than my clients." He wondered whether he would, by avoiding making waves, deny a client the best representation. He stated that his idealism about our system of law has been somewhat shaken.

12. With respect to the violations for which he had been disciplined, petitioner expressed disappointment that the Supreme Court had not written an opinion and expressed doubt that the disciplinary system operated correctly in his case, but also stated that he was not in a position to relitigate and did not desire to do so.

13. Petitioner still attributes much, if not all, of his disciplinary experiences in the past to the use of an inappropriate style of practice of criminal law in

a small county rather than to substantive violations of the Code of Professional Responsibility.

14. [B], Esq. is an attorney admitted to practice in the Commonwealth of Pennsylvania, residing at [ ] Township, [ ] County, Pa., and serving as Assistant Disciplinary Counsel-in-Charge of the District [ ] Office of the Disciplinary Board.

15. Throughout petitioner's disciplinary proceedings, there have been frequent contacts between petitioner and [B], by telephone, personally and through correspondence, nearly all such contacts being necessarily adversary in nature.

16. In the course of such contacts from 1976 to and including April 1979, petitioner repeatedly accused [B] of personal hostility, personal vendetta and unfairness and charged [B] with causing petitioner's wife and children to leave him.

17. In or about the end of March 1979, petitioner called [B] and requested that a hearing be held in two to three weeks, and when [B] indicated that he would need an additional six to eight weeks to prepare, petitioner accused him of being unfair, of unnecessarily delaying his case and of having a personal motive to do so.

18. On or about April 2, 1979, petitioner telephoned [B] and they again argued about the hearing date, and although petitioner inquired as to what information contrary to his reinstatement [B] had, [B] refused to commit himself and would not state what his position would be on reinstatement.

19. On or about April 3, 1979, petitioner visited [B] at his office and again accused [B] of causing him to lose his wife, of making his marriage "go on the rocks," of causing him to lose his children, of destroying his career, of causing the utter desolation of his life and career and the loss of everything

he held precious, and petitioner indicated to [B] that he could not understand why [B] had been so hard on him, and asked whether or not he had any compassion whatsoever, and accused [B] of prying without mercy into his personal life and personal problems.

20. On or about April 6, 1979, between 12:30 a.m. and 1:00 a.m., a rock was thrown through the window of [B]'s home, which was marked with the wording "DEATH TO [B]—SLOWLY."

21. On or about April 6, 1979, approximately 30 minutes after the rock was thrown through [B]'s window, a telephone call was received at [B]'s home by [C], [B]'s son, and a male voice said to [C]: "You will die slowly," which was repeated three times.

22. At approximately 1:30 a.m. on April 6, 1979, petitioner called [B] residence, at which time [B] answered the telephone, and petitioner said to [B], "You will die. You will die."

23. At approximately 2:00 p.m. on April 6, 1979, a telelphone call traced to a pay telephone at the [E] Library was made to [B]'s home and answered by [D], [B]'s son. The voice on the telephone stated: "Family will suffer after you father dies. The next time gasoline will come through the window. The next time the family will suffer after your father dies."

24. Petitioner was admittedly at the [E] Library at that time.

25. On April 6, 1979, petitioner telephoned [B]'s office three times, and when [B] returned the calls petitioner demanded to know whether [B] had made up his mind about his position with regard to petitioner's reinstatement petition.

26. On or about April 8, 1979, at approximately 2:30 a.m. a silent telephone call traced to petitioner's home was made to [B]'s residence.

27. The hearing committee finds that petitioner threw or caused the death-threat rock to be thrown through [B]'s window and made the telephone calls hereinabove described. /

It is the opinion of the board that petitioner has failed to meet the burden of demonstrating by clear and convincing evidence that he has the moral qualifications for admission to practice law in this Commonwealth, as placed upon him by Pa.R.D.E. 218. Further, it is the opinion of the board that petitioner's reinstatement would be detrimental to the integrity and standing of the bar, to the administration of justice and subversive of the public interest.

## III. RECOMMENDATION

The Disciplinary Board, therefore, recommends to this honorable court that the petition for reinstatement be denied and that [petitioner] be directed to pay the necessary expenses incurred in the investigation and processing of the petition for reinstatement. A statement of such expenses in the amount of $1,400.60 is appended to this report.

## ORDER

EAGEN, *C.J.*, And now, June 14, 1980, the recommendation of the Disciplinary Board of the Supreme Court of Pennsylvania dated May 20, 1980, is accepted and the petition for reinstatement is denied.

732

The expenses incurred by the board in the investigation and processing of the petition for reinstatement shall be paid by respondent.